## Cincinnati, New Orleans & Texas Pacific Railway Company v. Helm.

(Decided June 21, 1912.)

Appeal from Boyle Circuit Court.

1.  Railroads—Action for Personal Injury.—A detective for a railroad company, who goes in between cars standing on a sidetrack, without notice to a switching crew then using that track, and is hurt while there when they had no reason to anticipate his presence, cannot recover of the railroad company for his injury.

2.  Railroads—What is not Negligence.—An unusual or unnecessary bump of the cars is not negligence as to one to whom no duty of care exists, nor is failure to keep a lookout a ground of complaint where a lookout would have been unavailing.

CHAS. H. RHODES, GEO. H. STONE, NELSON D. RHODES and JOHN GALVIN for appellant.

ROBERT HARDING, J. W. RAWLINGS and E. V. PURYEAR for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

G. T. Helm was in the service of the Cincinnati, New Orleans & texas Pacific Railway Company as a detective, and his duties took him along the whole line of railway. On April 3, 1911, he was in Danville acting under special orders in making an examination of seals on freight box

cars in the Danville yard. In discharging this duty, he went upon what is called the house track where eleven freight box cars were standing. One of the rules of the company required the foreman of the switching crew to give notice when the house track was to be used and to also give notice when the switching on it was finished. This notice had been given that morning and no notice had been given that the switching was completed. Helm, while at the freight depot, saw cars taken from the house track, but he made no inquiry as to whether the switching on the house track was finished for the reason that he did not wish any body to know where he was or what he was doing. He examined the seal on several of the cars and finally went between the second and third cars, placed one foot on the beam of one box car and the other on the brace rod of the car next to it, and while he was in the act of taking the number from the seal on the end window, a car was shunted in on this track by the switching crew, which struck the cars standing on the house track and caused Helm to fall to the ground, injuring his left arm and shoulder. The switching crew had no notice that he was between the cars or was about the house track. They took eight cars from this track and carried them out to another track, left seven of them and returned the eighth to the house track. The engine pushed the car on the track and it was then cut loose from the engine and allowed to roll along the track without anybody on it, until it bumped against the cars standing on that track, and when this bump occurred Helm fell, as above stated. Helm brought this suit against the company to recover for his injuries which he charged were due to the negligence of the company in two particulars: First, in sending the car in on the track without anybody on it to keep a lookout or to control the car; second, in sending the car against the car standing on the house track with great and unnecessary violence. Helm testified that he could see one hundred and fifty yards of the switch; that before going between the cars he looked up the track and there were no cars or engine in sight, and, supposing he would be safe in going between the cars, he then got up on the bumpers to take the number of the seal.

The jury to whom the case was submitted, found for

Helm in the sum of $8,000 and the court having entered judgment against the company, it appeals.

The only question we deem it necessary to consider on the appeal is whether the lower court should have instructed the jury peremptorily to find for the defendant. We have held in a number of cases that cars should not be turned loose with no one upon them to keep a lookout or to control their movement, in yards where the presence of persons on the track may be anticipated. But, in this case, if a person had been on the car keeping a lookout he would not have been able to see Helm who was between the second and third car standing on the house track, for he was completely shut out from all view by the cars between which he was standing. A lookout would have been wholly unavailing as to him, and he, therefore, cannot complain that a lookout was not maintained. The switching crew were using the house track and had a right to use it. They had a right to run the car they returned to that track, against the cars standing on the track, as they had no reason to anticipate that any one would be on the cars. Helm had concealed himself between the cars and intentionally kept the persons in charge of the yards in ignorance of his whereabouts and of what he was doing. There cannot, therefore, be any recovery against the company on the ground that the car was run against the other car.

But it is insisted that the car was turned loose and that the bump was unusual, unnecessary and very violent. If the switching crew had a right to bump this car against the cars standing on the house track, the defendant is no more liable when they turned the car loose than it would be if they had brought the car in attached to the engine and so bumped it against the other cars with the same force. The question, therefore, comes to this: Did they owe Helm any duty? For there can be no negligence without the violation of some duty. If those moving the car knew or had reasons to anticipate the presence of persons on the other cars, they should have made the movement with ordinary care for the safety of such persons, but when they have no reason to anticipate the presence of anybody on the cars, no duty exists to exercise care for the safety of persons there. We had this question before us in the case of L. & N. R. R. Co. v. Hay's Admr., 145 Ky., 655, in which the lower court, by one of its instructions, authorized the jury to find for

the plaintiff if the coupling of the cars was made with unusual or extraordinary force. Criticising the instruction, we said:

"This instruction is too broad. The defendant's servants were not required to exercise care for the decedent's safety unless they knew or in the exercise of ordinary care should have anticipated the presence of persons on the car."

We also said in that case that the defendant was not liable unless the coupling was made with unusual and unnecessary force and with such violence as to show want of ordinary care in the handling of the car. But there cannot be a want of ordinary care in the handling of a car as to persons whose presence the trainmen have no reason to anticipate and as to whom the trainmen are not required to exercise care. We have held in several cases that persons who go in between cars standing on a track, without the knowledge of the men handling the cars and when they have no reason to anticipate their presence, take the risk. (L. & N. R. R. Co. v. Hocker, 111 Ky., 707; Wilson v. C. & O. Ry. Co., 130 Ky., 385; Age's Admr. v. L. & N. R. R. Co., 148 Ky., 219.) It seems to us the principles applied in these cases must necessarily be applied here, for it cannot be maintained that the switching crew, in making the bump in question, failed to exercise ordinary care as to one to whom was owed no duty to exercise care, as they had no reason to anticipate, under the circumstances, that any one was on the car.

It is true Helm was not a trespasser but was engaged in the business of the company, and so had the right to be upon the cars. But he knew the track was liable to be used by the switching crew any minute and with this knowledge he put himself between the cars where he could not be seen by them, and without any notice to them. In doing this he took the risk and he cannot complain that they were negligent in failing to guard against a danger which they had no reason to anticipate. To illustrate, if a freight train on its journey should stop at a station for any purpose, and while standing on a side track should be cut in two, would it be maintained that Helm could recover if he had gone in between the cars just as he did here to take the numbers of the seals, without the knowledge of the trainmen, and while so there had been hurt by reason of the cars being bumped together? But the cars in question were in charge of the

switching crew, no less than the train in the supposed case would be in charge of the trainmen. They had given notice of their intended use of the track, and had a short time before taken eight cars from it. The proximate cause of Helm's injury was his placing himself in a place of danger without taking proper precaution for his own safety. He should have waited until the switching was done, or put out a flag, or in some way given notice to the men handling the cars. His injury, when he did not do this, was, so far as they were concerned, simply an accident.

This conclusion makes it unnecessary for us to consider the other questions.

The judgment is reversed, and cause remanded for further proceedings consistent herewith.

Judge Nunn dissenting.