## Louisville & N. R. Co. v. Hall.

(Decided May 17, 1938.)

ASHBY M. WARREN, JAMES P. HELM, JR., and TRABUE, DOOLAN, HELM & HELM for appellant.

LUKINS & JONES for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment of the Jefferson circuit court in favor of the appellee, James W. Hall, for the sum of $10,900.

Hall was an employee of the Byrne & Speed Coal Company. The Byrne & Speed coal yards are located in the city of Louisville, and extend from Eighth street to Ninth street and from Kentucky street south for one-half block. The appellant's tracks are on Ninth street, and there is a switch or industrial track which runs from Ninth street into the Byrne & Speed coal yards and curves in a northerly direction toward Kentucky street. This track holds six freight cars, the sixth, or the one on the south end, being over a coal pit where it is unloaded. On Sunday morning, January 19, 1936, a Louisville & Nashville switch engine backed into the coal yard of the company for the purpose of moving a partly empty coal car, then standing over the dumping pit, so that two loaded cars could be moved into the yard. Composing the switching crew were Engineer E. C. Kennedy, Fireman M. J. Welch, Foreman J. W. Torpey, Switchmen D. J. Hines and J. D. Hennessy. All but Foreman Torpey were on the engine at the time it backed into the yard. Torpey, who was in charge of the movements of the crew, had walked into the yard through the gate by the coal company's office where he saw Hall sitting in the office. After entering, Torpey walked down by the car in question and told Hines to move out when they were ready. He testified that

when passing the car he noticed that the pans or drops were down. He then left the yard, leaving Hines in charge of the movement of the car. Hennessy was riding upon the front end of the engine when it came into the yard. He testified that he noticed that the pans were down on the car, and that he told his fellow employees that he would go to the office and get some one to put them up. Hines testified that he heard this remark. Hennessy then went up to the office of the coal company where he met Hall. At this point the evidence is conflicting as to just what conversation took place between Hall and Hennessy, but it is admitted that Hennessy told Hall that the pans were down and that Hall said he would put them up. The evidence shows that it was the duty of the employees of the coal company to close the pans on the cars before the appellant moved them. Hall went to the car, sat down on the track, and with his feet pushed the pans closed. At this time the engine moved out and Hall's left foot was caught by the rear wheel of the freight car and was crushed. While Hennessy was away from the crew, the triple valve upon the engine became frozen, and Hines and Kennedy were busy thawing it. Hines testified that when this work had been completed he climbed into the cab and gave the order to move. He stated that, due to a curve in the track, he was unable to see all of the coal car. Fireman Welch testified that the bell was ringing just before and while the engine was moving. All the members of the crew except Hennessy testified that the first knowledge they had that Hall had been around the car was after they had moved out of the yard and Hennessy called them.

The first ground urged for a reversal by the appellant is that the petition was defective in that it failed to allege that appellee had a right to be in the Byrne & Speed coal yards and that appellant knew, or by the exercise of ordinary care could have known, that appellee was in a place of danger, and therefore the court improperly overruled appellant's demurrer. We have carefully examined the transcript of the record, and fail to find an order overruling the demurrer to the petition. The demurrer was filed October 3, 1936, and no further order was entered until October 24, 1936, when defendant's answer was filed. The first paragraph of the answer was merely a traverse, and the second paragraph was a plea of contributory negligence. On

October 31, 1936, the plaintiff filed a reply traversing the plea of contributory negligence. On the same day, the case was assigned for trial on January 20, 1937, and it appears that the defendant proceeded to trial without pressing action on the demurrer. Where the defendant, without calling upon the court to pass on a general demurrer, files an answer making an issue and proceeds to trial without objection, the demurrer will be treated as waived. Klenekole Mining Company v. Lusk, 245 Ky. 73, 53 S. W. (2d) 168; Wilson v. Shepherd, 244 Ky. 225, 50 S. W. (2d) 540; Thomas v. Aldridge, 241 Ky. 1, 43 S. W. (2d) 179. But aside from this, we are of the opinion that appellant's contention is not sound. In his petition the plaintiff alleged:

> "While this plaintiff was engaged in closing the pans on the bottom of a standing coal car owned, operated, and controlled by the defendant, that the defendant did, through its agents, servants and employees, acting within the scope of their authority, and on the business of the defendant, negligently and carelessly, and with gross negligence and carelessness, cause the said coal car to run over this plaintiff's left foot and leg, and to so mangle and injure the left leg of this plaintiff, that it was necessary to amputate the plaintiff's left leg, and thereafter said left leg was amputated, as a result of said injuries, at a point just below the knee."

He further alleged that as a direct result of said injuries he suffered great physical pain and mental anguish; that the injury was permanent, and as a result thereof his power to earn money had been permanently impaired. In Davis' Adm'r v. Ohio Valley Banking & Trust Company, 127 Ky. 800, 106 S. W. 843, 32 Ky. Law Rep. 627, 15 L. R. A., N. S., 403, the petition alleged that "decedent lost his life 'by the gross negligence of the defendant, its agents, servants and employes while conducting and managing the said elevator.'"

A demurrer was sustained to the petition, and the plaintiff amended by adding "that the decedent at the time of his death was, by the consent, knowledge, and permission of the agents and servants of defendant, riding on top of the elevator," and by alleging facts about how the accident took place.

In its opinion the court said (page 844):

594

> "The original petition, to which a demurrer was sustained was sufficient. It has been declared time and again by this court that in an action for personal injuries it is sufficient to charge in a general way that the injury or death for which the recovery is sought was caused by the negligence of the defendant. The plaintiff is not required to state the circumstances or details under which the infliction of the injury was accomplished, in order to show that it had been occasioned by negligence, or to state facts showing that he was not guilty of negligence, thus anticipating the defense. An allegation of the extent of the injury, and the manner in which it was caused, has always been regarded as sufficient."

In Chesapeake & Ohio Railway Company v. Plummer, 143 Ky. 97, 136 S. W. 159, similar allegations in a petition were held to be sufficient. The petition merely charged in a general way that while Plummer was engaged in loading the car he was injured by the carelessness and negligence of the servants of the company in running another car violently against the car in which he was working. In Strong v. Louisville & Nashville Railroad Co., 240 Ky. 781, 43 S. W. (2d) 11, it was said (page 12):

> "In an action for physical injury inflicted by negligence, a general allegation is sufficient if it shows the extent of the injury and the manner of its infliction."

The general rule is that one seeking recovery for injuries caused by the negligence of another may charge negligence in general terms and then prove any appropriate acts of negligence as the proximate cause of his injuries, but, if he specifies the negligence in his pleading, he will be confined to the specified acts. S. K. Jones Construction Company v. Hendley, 224 Ky. 83, 5 S. W. (2d) 482; Louisville & Nashville Railroad Company v. Horton, 187 Ky. 617, 219 S. W. 1084; Louisville & Nashville Railroad Company v. Benke's Adm'r, 176 Ky. 259, 195 S. W. 417; Belcher v. Sandy Valley & E. Railway Company, 207 Ky. 560, 269 S. W. 729. It has been held that a plaintiff has a right to present the last clear chance doctrine under a general allegation of negligence. Braden's Adm'x v. Liston, 258 Ky. 44, 79 S. W. (2d) 241; Kentucky Traction & Terminal Company v. Wilburn, 206 Ky. 510, 267 S. W. 1090. Under

the foregoing authorities, the petition in the instant case stated a cause of action. However, if it had been defective, the defects would be cured by the verdict. Considerable proof was heard without objection concerning the nature of appellee's employment, the duty of employees of the Byrne & Speed Coal Company to raise the pans on freight cars in the coal yards, before they were moved, his right to be at the place where he was injured, and the knowledge on the part of Hennessy that he had gone to raise the pans on the car about to be moved. Thus, proof was heard without objection in regard to the matters which appellant claims were improperly omitted from the petition, and every question was covered by the instructions. Under such circumstances, the verdict cures the defect in the petition. Jefferson Dry Goods Company v. Blunk, 264 Ky. 673, 95 S. W. (2d) 244; Luker v. Philpot, 261 Ky. 265, 87 S. W. (2d) 610; Young v. Barnett, 258 Ky. 330, 80 S. W. (2d) 16; City of Paducah v. Konkle, 236 Ky. 582, 33 S. W. (2d) 608; Theonis' Adm'x v. Andrews, 231 Ky. 160, 21 S. W. (2d) 250; Louisville & Nashville Railroad Company v. Lewis, 211 Ky. 830, 278 S. W. 143; Louisville Fire Brick Works v. Tackett, 203 Ky. 367, 262 S. W. 299; Chesapeake & Ohio Railway Company v. Thieman, 96 Ky. 507, 29 S. W. 357, 16 Ky. Law Rep. 611.

The next ground for reversal is that the instructions were prejudicially erroneous, and were not authorized by either the pleading or the proof. Instruction No. 1 was, in substance, that if the jury believed that defendant requested plaintiff to raise the pans or if defendant knew, or by the exercise of ordinary care could have known, that plaintiff was under the coal car for the purpose of raising the pans, then it was the duty of the defendant not to move the car without giving to the plaintiff timely warning of its intention so to do. Appellant contends there was neither pleading nor proof that appellant knew or could have known that appellee was under the car. As heretofore stated, the proof was admissible under the general allegation of negligence. Appellee, supported by two other witnesses, testified that the only way the pans could be closed on this car was by sitting down under it and pushing the pans closed with his feet, and that this was the customary method. Appellant's witness Torpey testified that this was not the proper method; that the

cars were equipped with mechanical means by which the pans could be closed. However, when asked whether this particular car was equipped with such mechanical device, witness did not reply in the affirmative, merely saying that practically all cars were equipped with a device for raising the pans which implied that some cars were not. The testimony of appellant's own witness Hennessy admits knowledge on his part that appellee was engaged in putting up the pans. In Chesapeake & Ohio Railway Company v. Plummer, supra, it was held that knowledge upon the part of a station agent that men were engaged upon work upon the cars was knowledge on the part of the railroad, even though there was no evidence that members of the switching crew knew of it. Knowledge upon the part of an immediate member of the switching crew would certainly be knowledge upon the part of the railroad.

The next objection is to the use of the word "requested." This contention is based on the theory that Hennessy was without authority to request or order Hall to close the pans, and there is no evidence that such a request was made. The evidence shows that it was the duty of the employees of the coal company to close the pans, and that the railroad company would not move the cars unless they were closed. In any event, it is unlikely that it would move a partly empty coal car with the bottom, or dumping doors, open. Hennessy admits telling Hall that the pans were down, while Hall testified that Hennessy told him to put them up. However, it is clear that, upon being informed that the pans were down, appellee was merely doing his duty when he closed them. It matters little whether Hall was requested to close the drop doors of the car or merely told that they were down. Hall knew that Hennessy was a member of the switching crew, and, upon telling him that he was going to close the drop doors, had a right to rely upon him for protection from injury by the movement of the car. We do not find any prejudicial error in instruction No. 1.

Appellant next contends that instruction No. 2 was erroneous due to the use of the words "cause" and "caused." In substance, the instruction told the jury that it was the duty of plaintiff to exercise ordinary care for his safety and, if they believed that he failed in that duty and such failure, if any, caused or so contributed to cause or bring about his injury, that but for

such failure he would not have been injured, they should find for the defendant even though they might believe defendant failed in its duty as submitted in instruction No. 1. In Smith's Adm'r v. Ford Motor Company, 202 Ky. 706, 261 S. W. 245, instruction No. 2 included "his failure, if any, caused or so contributed to cause," and instruction No. 3 also contained the clause "caused or so contributed to cause." In discussing instruction No. 3 the court said: "The instruction was simply a concrete instruction on contributory negligence." Instruction No. 2 is not open to the criticism made by appellant that the use of the words "cause" and "caused" might have led the jury to believe that the contributory negligence of the plaintiff, if any, must have been the sole cause of the injury in order to relieve the defendant of liability.

Appellant finally complains because the court failed to give instructions A and B offered by it. The instructions given by the court fairly presented the issues to the jury and stated in proper form the principles involved in appellant's offered instructions.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.