## Nashville, C. & St. L. Ry. Co. v. Williams.

Dec. 17, 1940.

Wheeler & Shelbourne and Waller & Threlkeld for appellant.

Alexander & Reed for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

R. W. Williams brought this action against the Railway Company to recover $1,175 for lost time and $13,825 for physical pain and mental anguish. The trial resulted in a verdict in favor of Williams for $300 for lost time and $3,000 for physical pain and mental anguish. This appeal is being prosecuted from a judgment on that verdict.

On the night of May 16, 1938, Williams was working for the Paducah Ice Manufacturing Company and was engaged in icing railway cars used in the transportation of strawberries from Paducah. He had been engaged in this work for several days. He sustained his injury when one of the Railway Company's switch engines connected with a string of four cars standing at the icing platform. Williams had one foot on the platform and the other on the top of the car furthest from the engine. There was a space of some 18 inches between the car and the platform. His back was toward the engine. He said he fell on a 300 pound cake of ice on the platform and then on to the top of the car, thereby sustaining the injuries complained of. He managed to get off the car before it moved very far. It seems that about 600 pounds of ice had been placed in the car in question before it was determined that it was unsuited for the packing of strawberries. At the time of the injury Williams, his boss, Outland, and another person, were engaged in removing the ice from this car. About half the ice had been taken out at the time the cars were moved. Outland testified that he was standing on the car with his back toward the engine and was thrown to a sitting position when the engine made the connection.

Williams claimed he had no notice of the movement of the cars, and he relies upon a rule of the Railway Company which is as follows: "Before disturbing cars which are being loaded or unloaded, the person or persons in or about them must be notified." Williams admitted that the usual custom as to notice for the move-

ment of the cars was for the icing foreman, Outland in this case, to notify the foreman of the switching crew that he was ready. The foreman of the switching crew and an employee of the Fruit Railway Express Company testified that when asked by the Railway foreman as to whether he was ready, Outland said, "O. K." When asked whether he said in the presence of Mr. Fortson immediately after the accident that he told the switching crew that he was ready for them to make the coupling, but had not expected them to make it as quickly as they did, Outland said, "I made a remark like that." He said several times that his answer to the foreman of the switching crew, when asked if he was ready, was, "We are about ready now." He said that he did not remember saying, "O. K." Williams testified that he did not know that the coupling was about to be made, and that he did not hear Outland say that he was ready.

Williams received compensation from his employer in the amount of $366.66 for lost time. He denied, however, that this amount was in full settlement of his claim for lost time and that the Railway Company was entitled to have this sum credited upon any judgment which he might obtain against it. He stated that he elected to credit the amount sued for by the sum of $366.66 and waived that much of his claim in favor of the Ice Company. He then prayed judgment for only so much lost time, as set out in his petition, as was in excess of the $366.66 already received by him as compensation.

Reversal is urged upon the grounds that (1) there was no showing of negligence on the part of the Railway Company sufficient to warrant the submission of the case to the jury; (2) the trial court admitted incompetent evidence; (3) instructions Nos. 1, 2 and 4 were erroneous; (4) the verdict is excessive and against the weight of the evidence; and (5) improper argument was made by counsel for Williams.

Williams stresses the aforementioned operating rule of the Company as to the giving of notice before moving cars, and also the cases of Louisville & N. R. Co. v. Hall, 273 Ky. 590, 117 S. W. (2d) 571; Louisville & N. R. Co. v. Hay's Adm'r, 145 Ky. 655, 141 S. W. 64; Chesapeake & O. Ry. Co. v. Plummer, 143 Ky. 97, 136 S. W. 159; and Louisville & N. R. Co. v. Turner, 12 Ky.

Law Rep. 606, in support of his contention that persons working at the loading and unloading of railway cars must be notified by the agents of the Railway Company before the cars are moved. There is no question but that the agents of the Railway Company knew that persons were working in and about the cars. It is our view, however, that the record shows that it was the custom for the foreman of the icing crew to notify the agents of the Railway Company when a movement of cars was desired. Williams said that he knew of this custom.

The foregoing summary of the evidence shows that there is sharp conflict as to whether or not the foreman in charge of the icing crew, Outland, notified the foreman of the switching crew that he was ready for the cars to be moved. It is clear that there was some discussion as to the movement of the four cars in question, but we are not prepared to say that the showing is such as to warrant the direction of a peremptory instruction in favor of the Railway Company. Only about one-half of the ice had been removed from the car which was found to be unsuited for use. Outland was standing with his back toward the switch engine, and was thrown to a sitting position when the connection was made. As we view the question of notice, it was Outland's duty to notify those working under him to leave the cars when he gave notice to the agents of the Railway Company that he was ready for the cars to be moved.

Under the foregoing circumstances we think the complaint as to instructions Nos. 1 and 2 is well grounded. These instructions follow:

"No. 1. It was the duty of the servants and employees of the defendant, at the time and place mentioned in the evidence, to give to plaintiff reasonable notice of their intention to move the car mentioned in the evidence before doing so, and if you shall believe from the evidence in this case that they failed to do this and by reason of such failure and as the direct and proximate result thereof the accident complained of was brought about, then the law is for the plaintiff and you will so find, but unless you shall so believe from the evidence the law is for the defendant and you will so find."

"No. 2. If you shall believe from the evidence that the defendant gave notice to plaintiff that it was about to move said car, or that plaintiff's foreman Outland had directed the servants and agents of the defendant to move said car just before same was moved, and that plaintiff knew that his foreman had so directed the servants and agents of the defendant to move same, then the law is for the defendant and you will so find."

As we have indicated, it was clearly shown that the custom in the movement of the cars was for the icing foreman to notify the foreman of the switching crew when the cars were ready to be moved. We have also noted the conflict in the evidence as to whether or not Outland gave such notice prior to the time Williams was injured. It follows, therefore, that the only question to be submitted to the jury as to notice was, whether or not the jury believed that Outland gave such notice. If he did, the finding should have been for the Railway Company. If he gave no such notice, the finding should have been for Williams. It was unnecessary, under the circumstances, for the agents of the Railway Company to give any particular notice to Williams, and, as we have indicated, it was not necessary that Williams know of the notice given by Outland.

The criticism of Instruction No. 4 is that the jury was authorized to find for Williams for loss of time not to exceed $1,175. Clearly this was error, in view of the fact that Williams waived his claim in the amount of $366.66, the amount received by him as compensation, in favor of the Ice Company. He asked judgment for only so much lost time as was in excess of that amount. The instruction should have been so framed.

The complaint as to incompetent evidence is that a doctor was permitted to testify that he thought Williams' injuries were permanent. We fail to see how this was prejudicial to the Railway Company, in view of the prayer for damages for pain and suffering which Williams had already endured, and which he might reasonably be expected to endure in the future.

The criticism as to improper argument by counsel for Williams was directed toward a statement wherein he referred to the part of Instruction No. 1 requiring that notice be given to Williams. We do not think that

this reference was improper in view of the instruction, though it may have been forceful.

We find no basis for the complaint that the verdict is excessive, and that it is against the weight of the evidence.

Wherefore, the judgment is reversed with directions to set it aside, and for proceedings consistent with this opinion.