## Kentucky & I. Terminal R. Co., Inc., v. Whoberry et al.

September 23, 1947.

William H. Field, Judge.

'Charles W. Milner and Hubert T. Willis for appellant.

W. Clarke Otte and James Shaw for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Allen Whoberry, appellee, a former employee of Louisville Cooperage Company, recovered a personal injury judgment for $3000 against Kentucky and Indiana Terminal Railroad Company, appellant. The latter appeals.

Since Whoberry had already received for this same injury workman's compensation benefits in the total amount of $2099.22 from his employer's insurer, American Mutual Liability Insurance Company, joint appellee herein, the latter is a participant in Whoberry's judgment to that extent.

Appellant now contends that it was entitled to a directed verdict.

Whoberry was injured when appellant moved a boxcar along a spur track lying close beside a concrete loading platform of Louisville Cooperage Company with a resulting collision between the boxcar and a small, heavily loaded, stave wagon, which was on this platform and which had a gross weight of more than a ton. This resulting collision jammed Whoberry against a brick wall, knocking him unconscious and breaking several bones. Upon this particular occasion, the appellant, according to the undisputed evidence on this trial, had followed its usual custom of similar operation and had moved this boxcar only after ascertaining that all men and obstructions were cleared for the movement. This was done by the train crew through inquiry made of one Eric Childs, who was yard foreman of Louisville Cooperage Company and who was in charge of Whoberry and his fellow workmen. Childs notified appellant's crew that everything was clear so that the train might proceed. No witness denied that this notification was given by Whoberry's employer or that it was received by the Railroad Company, as stated. Immediately after such notification, the boxcar started moving and either (1) the little, stave-loaded wagon simultaneously began, by force of gravity or by some act on the part of Whoberry, to

roll toward the boxcar or else (2) this wagon just remained where it had been negligently placed, right there in such a close proximity to the moving boxcar that the projecting, metal ladder on the side of the boxcar caught the corner of the wagon and threw it against Whoberry.

We have just mentioned the two theories of causation. The trainmen adopt the first theory. Whoberry adopts the second theory. There is perhaps some evidence in this record supporting each of these theories, and this would necessitate a submission of this question to a jury for its decision if the case *against this train operator* could stand in a sturdy self-sufficiency produced by the legal vitality of Whoberry's theory. But it seems to us that the Whoberry theory is imperfect to mold a case against the Railroad Company because it was apparently the duty, by logic and specific custom, of Louisville Cooperage Company to clear the way along its own platform for train movement. And it was also the Cooperage Company's duty, by the same reasoning, to notify the Railroad Company of such clearance, especially so in view of the fact that the Cooperage Company maintained at this very place its own foreman, who was continually ready and able to perform such a service.

There was no sort of affirmative evidence in this record disputing the contention of the trainmen that Whoberry's employer, through its own agent, Whoberry's foreman, notified the appellant that the way was clear and that the train might proceed. When such notification was, under the sanction of prevailing custom, thus given and received, it would appear that the train movers then had a legal right to rely upon such a notification. And if there was negligence in allowing the stave wagon to stand, assuming that this was the manner of occurrence, where it jeopardized Whoberry's safety, then such negligence would seem to have been that of Whoberry's employer and not that of the train mover, this appellant. For a previous decision of this court on the subject of the apparent duty of a loading platform foreman to notify the railroad carrier of safety clearance under conditions similar to those in the instant case, see the case of Nashville, C. & St. L. Ry. Co. v. Williams, 285 Ky. 211, 147 S. W. 2d 93.

In passing, it should be observed that Whoberry

was neither an employee nor a passenger of this Railroad Company. Therefore, as a non-passenger and a non-employee, he was entitled to receive no higher degree of care toward himself than would any other person of the general public at large be entitled to receive. In 10 Am. Jur. 79, we find the following enunciated doctrine:

"As between a carrier and a person who is neither a passenger nor an employee, there is no relation arising out of any privity of contract. Hence, any liability of the carrier for injuries to such person is to be determined upon a different basis than would otherwise prevail. In general, the duty of a carrier toward a person who is neither a passenger nor an employee is so to conduct its affairs and operate its business as not to injure the rights of others. This rule has found familiar expression in the legal maxim, 'sic utere tuo ut alienum non laedas.' Included within such liability are wanton injuries inflicted by the employees of the carrier. It is also clear that as to such persons the carrier is not under a duty of using the same degree of vigilance and care as it would normally exercise with respect to passengers. The precise quantum of care and caution properly exercisable by the carrier toward nonpassengers is not subject to an exact formula which would be applicable to all situations that may arise. The surrounding circumstances largely set the pattern of liability and determine with fair exactitude whether the carrier discharged its duty in the particular instance."

Whoberry was entitled to receive treatment of ordinary care. And we believe he received just such care on the part of this Railroad Company, exercised in the manner related above.

Because all the affirmative evidence on this trial indicated that the Railroad Company's employees in charge of its train were, upon this occasion, specifically notified by the Cooperage Company of a safe clearance along the latter's platform, which notification was relied upon by this train crew in accordance with previous custom, the trial court should, we believe, have directed a verdict for the appellant at the conclusion of the evidence. Failure of the trial court to do so was prejudicial and reversible error.

. For the reason herein indicated, the judgment is now hereby reversed for further proceedings consistent with this opinion.